FILED
10-28-2022
George L. Christenson
Clerk of Circuit Court
2022CV006905
Honorable Kristy Yang-47
Branch 47

STATE OF WISCONSIN     CIRCUIT COURT     MILWAUKEE COUNTY
                                CIVIL DIVISION

HEATHER GUDEX,                         **CLASS ACTION COMPLAINT**
4905 S Greenbrook Terrace, Apartment 19207
Greenfield, WI 53220,

         Plaintiff,

         v.

CREDENCE RESOURCE MANAGEMENT, LLC,     Case No.: _____
4222 Trinity Mills, Suite 260                          Classification Code: 30301
Dallas, TX, 75287,

         Defendant.

COMES NOW Plaintiff Heather Gudex, by her Attorneys, Ademi LLP, and for a cause of action, states as follows:

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to Wis. Stat. § 801.05(3). Defendant's collection activities were directed at Wisconsin residents in Wisconsin. Venue in Milwaukee County is proper because the claim arose in Milwaukee County, and Defendant attempted to collect debts in connection with a consumer transaction that occurred in Milwaukee County. Wis. Stat. § 801.50.

## PARTIES

3. Plaintiff Heather Gudex is an individual who resides in Milwaukee County.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that Defendant sought to collect from Plaintiff debts incurred as a result of a consumer transaction.

6. Defendant Credence Resource Management, LLC ("Credence") is a foreign limited liability company with its principal offices located at 4222 Trinity Mills, Suite 260, Dallas, TX 75287.

7. Credence is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Credence is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Credence is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

10. On or about March 30, 2022, Credence mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "AT&T Uverse." A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as a result of a transaction for telecommunication services, which were used exclusively for personal, family, and household purposes.

2

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter used by Creedence to attempt to collect consumer debts.

14. Exhibit A includes the following settlement offer:

> Our Client, AT&T Uverse, has authorized us to offer you the opportunity to resolve your account for less than the full balance. If you take advantage of this offer, you can resolve your account with AT&T Uverse, for the amount of $28.63. This is a savings to you of $22.50. We are not obligated to renew this offer.

15. Exhibit A does not provide a settlement expiration date upon which the offer would need to be renewed.

16. Upon information and belief, the statement that Credence is "not obligated to renew these offers," is a materially false, deceptive, and misleading statement.

17. In the absence of an expiration date, the unsophisticated consumer would understand a statement that the debt collector is "not obligated to renew this offer," to mean that Credence could, and would, rescind the settlement offer at any time and without notice.

18. Upon information and belief, the debtor can settle the account for $28.63, or less, at any time.

19. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word

3

"obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775-76 (7th Cir. 2007).

20. While Exhibit A tracks this safe-harbor language, without an expiration date, the language does not have its intended effect.

21. As a practical matter, the unsophisticated consumer is not a lawyer. She does not know that the purpose of the statement that "we are not obligated to renew this offer" is to make her "realize that there is a renewal possibility but that it is not assured."

22. Instead, where the debt collector states that it is not obligated to renew an offer but does not include an expiration date by which payment must be made, the unsophisticated consumer would understand the safe-harbor language to mean that the offer was subject to revocation.

23. The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

24. Without an expiration date, the unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" as an implied threat to revoke the settlement offer at any time and without notice.

25. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable—rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances. *E.g., Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d

4

at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

26. The safe-harbor language used in Exhibit A was created specifically for cases where a debt collection letter stated a settlement date certain. Without a date certain, the language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability. *E.g., Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *9 (E.D. Wis. Apr. 26, 2018).

27. Moreover, Credence's failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

28. The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the

recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

29. The unsophisticated consumer, unsure when the settlement offer in Exhibit A expires, would feel compelled to make a settlement payment as soon as possible to ensure the settlement offer had not expired without notice prior to her tendering of payment.

30. Plaintiff was confused and misled by Exhibit A.

31. The unsophisticated consumer would be confused and misled by Exhibit A.

### *The FDCPA*

32. Congress has described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

33. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP*, 27 F.3d 1254, 1257 (7th Cir. 1994). Furthermore, whether a debt collection letter is false, confusing, or misleading as a question of fact. Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775-76 (7th Cir. 2007); *see also Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 367 (7th Cir. 2018) (quoting *McMillan v. Collection Professionals*, 455 F. 3d 754, 759 (7th Cir. 2006)).

6

Case 2:23-cv-00055-JPS     Filed 01/13/23     Page 6 of 12     Document 2

34. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F. Supp. 941, 944 (D. Conn. 1993).

35. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

36. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

37. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

38. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

### *The WCA*

39. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

40. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, and instructs that these protections must be "liberally construed and applied" in order "to induce compliance with the WCA and thereby promote its underlying objectives." Wis. Stat. §§ 421.102(1), 425.301; *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).

41. To further the objectives underlying the WCA, the Wisconsin legislature has empowered the Wisconsin Department of Financial Institutions and the Wisconsin Department of Justice to bring actions against any person who violates the WCA, and has further provided

Wisconsin consumers with an array of protections and legal remedies, including a private cause of action to temporarily or permanently enjoin conduct that violates the WCA or the federal consumer credit protection act and recover class wide statutory, actual, and punitive damages on behalf of all consumers who suffer similar injuries. Where a consumer seeks injunctive or declaratory relief, the WCA provides that "it shall not be a defense to an action brought under this section that there exists an adequate remedy at law." See Wis. Stats. §§ 421.102(1), 425.301, 425.401, 426.109(1), 426.110(1); 426.110(4)(e), 426.301.

42. The private cause of action is essential to deterring violations and furthering the WCA's underlying objectives:

> The provisions of the WCA for private enforcement through the use of civil legal remedies by the individual consumer are some of the most important sections of the Act. The function of private enforcement is both to secure the rights of the individual and simultaneously to assist public authorities in achieving compliance for the ultimate benefit of all consumers.

Thomas D. Crandall, "Wisconsin Consumer Credit Laws Before and After the Consumer Act," 1973 Wis. L. Rev. 334, 376-77.

43. Thus, private actions under the WCA benefit not only consumers whose rights have been violated and competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law, but also the public authorities and the public generally, who would otherwise be burdened with the costs of using public resources to achieve compliance.

44. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

8

45. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection should be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

46. Wis. Stat. § 421.108 provides: "Every agreement or duty within chs. 421 to 427 imposes an obligation of good faith in its performance or enforcement. 'Good faith" means honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing."

47. Wis. Stat. § 426.110 provides, in relevant part:

(1) ... [A]ny customer affected by a violation of chs. 421 to 427 and 429 or of the rules promulgated pursuant thereto or by a violation of the federal consumer credit protection act, or by conduct of a kind described in sub. (2), may bring a civil action on behalf of himself or herself and all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429. [...]

(2) Actions may be maintained under this section against any person who in making, soliciting or enforcing consumer credit transactions engages in any of the following kinds of conduct:

...

(c) False, misleading, deceptive, or unconscionable conduct in enforcing debts or security interests arising from consumer credit transactions.

48. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

9

49. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct ... in such a manner as can reasonably be expected to threaten or harass the customer."

50. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

51. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

52. By stating "we are not obligated to renew this offer" alongside a settlement offer without any expiration date, Exhibit A indicates that such offer may expire at any time without warning and thus includes false, deceptive, and misleading representations.

53. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10).

## COUNT II – WCA

54. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

55. By stating "we are not obligated to renew this offer" alongside a settlement offer without any expiration date, Exhibit A indicates that such offer may expire at any time without warning and thus could reasonably be expected to threaten and harass Plaintiff

56. Defendant violated Wis. Stat. §§ 421.108, 426.110, 427.104(1)(g), 427.104(1)(h), and 427.104(1)(L)

## CLASS ALLEGATIONS

57. Plaintiff brings this action on behalf of a class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a debt collection letter by Creedence in the form of Exhibit A to the Complaint, (c) from October 28, 2021 through the present, (d) that was not returned by the postal service.

58. The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the class.

59. There are questions of law and fact common to the members of each of the class, which common questions predominate over any questions that affect only individual class members.

60. Plaintiff's claims are typical of the claims of their respective class members. All are based on the same factual and legal theories.

61. Plaintiff will fairly and adequately represent the interests of the members of the class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

62. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

63. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)  actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: October 28, 2022

          **ADEMI LLP**

By: *Electronically signed by Ben J. Slatky*
John D. Blythin (SBN 1046105)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com